# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# OCALA DIVISION

WILLIAM BRIAN MYERS,

    Petitioner,

vs.                                    Case No.:    5:18-cv-171-Oc-39PRL
                                                            5:16-cr-32-Oc-32PRL

UNITED STATES OF AMERICA,

    Respondent.

_____

## ORDER

This case is before the Court on Petitioner William Brian Myers's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence. (Civ. Doc. 1, § 2255 Motion).[1] Myers claims that his attorney gave ineffective assistance in relation to his decision to plead guilty and sentencing. The United States filed a response in opposition. (Civ. Doc. 16, Response). Myers also filed a reply brief, in which he claims he is entitled to a reduced sentence under the First Step Act of 2018 and the Eighth Amendment. (Civ. Doc. 27, Reply). The § 2255 Motion is ripe for a decision.

Under 28 U.S.C. § 2255 and Rule 8(a) of the Rules Governing Section 2255 Proceedings, the Court has determined that a hearing is not necessary to resolve the merits of this action. See Rosin v. United States, 786 F.3d 873, 877 (11th Cir. 2015) (an evidentiary hearing on a § 2255 motion is not required when the petitioner asserts

---

[1]     Citations to the record in the underlying criminal case, United States v. William Brian Myers, No. 5:16-cr-32-Oc-32PRL, will be denoted "Crim. Doc. ___." Citations to the record in the civil 28 U.S.C. § 2255 case, No. 5:18-cv-171-Oc-39PRL, will be denoted "Civ. Doc. ___."

1

allegations that are affirmatively contradicted by the record or patently frivolous, or if in assuming the facts that he alleges are true, he still would not be entitled to any relief). For the reasons set forth below, Myers's § 2255 Motion is due to be denied.

## I. Background

On September 21, 2016, a federal grand jury in the Middle District of Florida returned a one-count indictment against Myers. (Crim. Doc. 1, Indictment). The Indictment alleged that beginning on an unknown date (but no later than sometime in September 2015), and continuing through March 10, 2016, or so, Myers conspired with other individuals to distribute and to possess with intent to distribute 50 grams or more of methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B)(viii), and 846. On December 13, 2016, Myers signed a written plea agreement in which he agreed to plead guilty to the charge. (Crim. Doc. 15, Plea Agreement). About a month later, on January 10, 2017, Myers formally pled guilty in open court pursuant to the plea agreement. (Civ. Doc. 16-1, Plea Transcript). Myers admitted that he willfully joined a plan to distribute a controlled substance, that the object of the plan was to distribute or possess with intent to distribute 50 grams or more of methamphetamine, and that he knew the unlawful purpose of the plan when he joined it. Plea Agreement at 20; Plea Tr. at 19-20. He further admitted that he sold 21.7 grams of methamphetamine to a cooperating defendant in February 2016, and that he sold a total of 259.6 grams of methamphetamine to an undercover officer on three occasions between February 29 and March 9, 2016, for an overall total of 281.3 grams. Plea Agreement at 21.

The Magistrate Judge who presided over the change-of-plea colloquy recommended "that the guilty plea was knowledgeable and voluntary and that the offense

charged is supported by an independent basis in fact containing each of the essential elements of such offense." (Crim. Doc. 19, Report and Recommendation Concerning Plea of Guilty). Without objection, the Court accepted Myers's guilty plea and adjudicated him accordingly. (Crim. Doc. 21, Acceptance of Guilty Plea).

According to the final Presentence Investigation Report (PSR), Myers's advisory sentencing range under the United States Sentencing Guidelines was between 151 and 188 months in prison, based on a total offense level of 29 and a Criminal History Category of VI. (Crim. Doc. 25, PSR at ¶ 108).[2] As it turned out, the 281.3 grams of methamphetamine that Myers sold "had a purity level of between 97.1% and 100%," Response at 3, so the PSR held Myers "accountable for 275 grams of Methamphetamine (actual)," PSR at ¶ 24. Thus, Myers started with a base offense level of 32 under U.S.S.G. § 2D1.1(c)(4) because the offense involved at least 150 grams but less than 500 grams of actual methamphetamine. PSR at ¶ 24; U.S.S.G. § 2D1.1(c)(4) (2016). Myers received a three-level reduction for acceptance of responsibility under U.S.S.G. §§ 3E1.1(a) and (b), reducing his total offense level to 29. PSR at ¶¶ 29-32. Because the parties had no outstanding objections to the final PSR, the Court adopted its calculation of the advisory sentencing range. (Crim. Doc. 32, Sentencing Transcript at 3-4). Additionally, the United States moved for a four-level reduction under U.S.S.G. § 5K1.1 to recognize that Myers had provided substantial assistance, "which resulted in one of his co-conspirators pleading guilty." (Crim. Doc. 27, Substantial Assistance Motion at 1). The Court granted the

---

[2] The initial PSR would have imposed the career offender enhancement and given Myers a two-level enhancement for maintaining a drug premises. (Crim. Doc. 22, Initial PSR at ¶¶ 25, 30). However, defense counsel successfully objected to those enhancements before the Probation Officer, who removed them from the final PSR (Crim. Doc. 25).

Substantial Assistance Motion, which effectively reduced Myers's total offense level to 25 and his advisory guidelines range to between 110 and 137 months in prison. Sentencing Tr. at 5. The Court ultimately sentenced Myers to the low end of the guidelines range – 110 months in prison – followed by a three-year term of supervised release. Id. at 19; (Crim. Doc. 29, Judgment).

Myers did not appeal the sentence. As such, his conviction and sentence became final on April 11, 2017, fourteen days after the Court entered judgment, when time expired to file a notice of appeal. Adams v. United States, 173 F.3d 1339, 1342 n.2 (11th Cir. 1999). On April 4, 2018, he timely filed the instant § 2255 Motion. See § 2255 Motion at 13. Myers claims that his court-appointed attorney, Assistant Federal Public Defender Mary Mills, gave ineffective assistance by failing to obtain or to require the government to present the results of the drug purity analysis.

**II.     Discussion**

Under Title 28, United States Code, Section 2255, a person in federal custody may move to vacate, set aside, or correct his sentence. Section 2255 permits such collateral challenges on four specific grounds: (1) the imposed sentence was in violation of the Constitution or laws of the United States; (2) the court did not have jurisdiction to impose the sentence; (3) the imposed sentence exceeded the maximum authorized by law; or (4) the imposed sentence is otherwise subject to collateral attack. 28 U.S.C §2255(a) (2008). Only jurisdictional claims, constitutional claims, and claims of error that are so fundamentally defective as to cause a complete miscarriage of justice will warrant relief through collateral attack. United States v. Addonizio, 442 U.S. 178, 184-86 (1979). A petitioner's challenge to his sentence based on a Sixth Amendment claim of ineffective

4

assistance of counsel is normally considered on collateral review. United States v. Teague, 953 F.2d 1525, 1534 n. 11 (11th Cir. 1992).

To succeed on a claim of ineffective assistance of counsel, a petitioner must show both (1) that counsel's performance was deficient, and (2) that as a result of counsel's deficient performance, the petitioner suffered prejudice. Strickland v. Washington, 466 U.S. 668, 687 (1984). In determining whether counsel performed deficiently, the Court adheres to the standard of reasonably effective assistance. Weeks v. Jones, 26 F.3d 1030, 1036 (11th Cir. 1994). The petitioner must show, in light of all the circumstances, that counsel's performance fell outside the "wide range of professionally competent assistance." Id. To show that counsel's deficient performance prejudiced the defendant, the petitioner must show that there is a reasonable probability that, but for counsel's error, the result of the proceeding would have been different. Id. at 1036-37 (citing Strickland, 466 U.S. at 694). A "reasonable probability" is a probability sufficient to undermine confidence in the outcome. Strickland, 466 U.S. at 694. In determining whether a petitioner has met the two prongs of deficient performance and prejudice, the Court considers the totality of the evidence. Id. at 695. However, because both prongs are necessary, "there is no reason for a court… to approach the inquiry in the same order or even to address both components of the inquiry if the defendant makes an insufficient showing on one." Id. at 697; see also Wellington v. Moore, 314 F.3d 1256, 1261 n. 1 (11th Cir. 2002) ("We need not discuss the performance deficiency component of [petitioner's] ineffective assistance claim because failure to satisfy the prejudice component is dispositive.").

**A. The § 2255 Motion: Whether counsel gave ineffective assistance by failing to obtain the results of the drug purity analysis**

In the § 2255 Motion, Myers claims that counsel gave ineffective assistance because "[t]oxicology reports were never presented and my attorney never objected to … that fact." § 2255 Motion at 4. By "toxicology reports," Myers is presumably referring to the results of the drug purity analysis, which revealed that the methamphetamine Myers sold "had a purity level of between 97.1% and 100%." Response at 3. Because the offense level was based on the weight of pure methamphetamine, and the purity level was so high, Myers's total offense level was six levels higher compared to what it would have been if the crime had involved a mixture or substance of methamphetamine. Compare U.S.S.G. § 2D1.1(c)(4) (2016) with § 2D1.1(c)(7) (2016). According to defense counsel, Mary Mills, a discovery "snafu" prevented Myers from receiving a copy of the drug purity analysis until after he had already pled guilty. Sentencing Tr. at 8. Before pleading guilty, counsel had estimated Myers's guidelines range based on the assumption that the methamphetamine was a mixture or substance, but of course, the drug purity analysis upended that assumption. Id. Whereas counsel had estimated that Myers's base offense level would be 26, his base offense level ended up being 32. See id.

The precise nature of Myers's claim is difficult to discern because it consists of only two sentences. The first sentence simply states that "[t]oxicology reports were never presented and my attorney never objected to that fact," and the second sentence states that these facts support an ineffective assistance of counsel argument. § 2255 Motion at 4. It is not clear whether Myers is asserting that counsel gave ineffective assistance in relation to his decision to plead guilty, in connection with sentencing, or both. One interpretation of the claim is that counsel gave ineffective assistance in pre-plea

discussions by estimating Myers's guidelines range without knowing the results of the drug analysis, such that Myers's decision to plead guilty was misinformed. Another interpretation is that counsel gave ineffective assistance <u>at sentencing</u> by failing to demand that the government present the drug analysis report as proof of the purity level of the methamphetamine. Myers could have shed light on the nature of his claim by stating what remedy he sought (<u>e.g.</u>, withdrawal of the guilty plea or resentencing), but he left that portion of the § 2255 form blank. § 2255 Motion at 13. Thus, the Court is left to guess at the nature of Myers's claim. The Court is not required to do so, because vague and conclusory allegations, unsupported by specifics, do not even warrant an evidentiary hearing, let alone habeas relief. <u>Wintrhop-Redin v. United States</u>, 767 F.3d 1210, 1216 (11th Cir. 2014); <u>Tejada v. Dugger</u>, 941 F.2d 1551, 1559 (11th Cir. 1991). Nevertheless, the Court finds that the claim fails on the merits under either interpretation.

"Before deciding whether to plead guilty, a defendant is entitled to the effective assistance of competent counsel." <u>Padilla v. Kentucky</u>, 559 U.S. 356, 364 (2010) (quotation marks omitted). Thus, "[t]he Supreme Court has long recognized that <u>Strickland</u>'s two-part inquiry applies to ineffective assistance of counsel arising out of the plea process." <u>Osley v. United States</u>, 751 F.3d 1214, 1222 (11th Cir. 2014) (citing <u>Hill v. Lockhart</u>, 474 U.S. 52, 57 (1985)). As with any other ineffective assistance claim, a petitioner must demonstrate that counsel's performance was deficient and that, but for counsel's deficient performance, there is a reasonable probability the result of the proceeding would have been different. <u>Hill</u>, 474 U.S. at 57 (citing <u>Strickland</u>, 466 U.S. at 687-88, 694). In this context, where a petitioner claims that counsel's mis-advice caused him to plead guilty, demonstrating prejudice means "show[ing] that there is a reasonable

7

probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Id. at 59. Importantly, however, "an erroneous strategic prediction about the outcome of a [proceeding] is not necessarily deficient performance." Lafler v. Cooper, 566 U.S. 156, 174 (2012).

To the extent Myers claims that counsel's failure to obtain the results of the drug purity analysis affected his decision to plead guilty, he has not established that counsel's performance was deficient. There is a "strong presumption" that counsel's actions fell within the wide range of constitutionally adequate assistance, and a petitioner must "establish that no competent counsel would have taken the [challenged] action." Khan v. United States, 928 F.3d 1264, 1272 (11th Cir. 2019) (quoting Chandler v. United States, 218 F.3d 1305, 1314-15 (11th Cir. 2000) (en banc)). Myers's conclusory allegations have not overcome the "strong presumption" that counsel's advice was reasonable.

Before Myers pled guilty, Ms. Mills advised him of his estimated guidelines range based on the assumption that the methamphetamine was a mixture or substance rather than pure methamphetamine. (Civ. Doc. 16-3, Mills's Affidavit). That assumption turned out to be incorrect, but that does not mean counsel's assumption was unreasonable. "A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." Strickland, 466 U.S. at 689. When an attorney gives her client an estimate of the client's guidelines exposure, the attorney often must make that estimate based on incomplete information. Inevitably then, the attorney must fill in the gaps by making assumptions, and some of those assumptions may prove to be wrong. But that alone does not make counsel's

performance ineffective, because "an erroneous strategic prediction about the outcome of a [proceeding] is not necessarily deficient performance." Lafler, 566 U.S. at 174. Beyond what has already been stated, all the Court knows is that, because of a discovery "snafu," Myers's counsel did not have a copy of the drug analysis report when she advised Myers of his estimated guidelines range prior to pleading guilty. Sentencing Tr. at 8; see also Mills's Affidvait. It is unclear whose fault this was, or if it was anyone's fault at all. It is not even clear whether defense counsel was aware of the existence of the drug analysis report at the time she advised Myers about his estimated guidelines range. Thus, the record does not indicate that it was objectively unreasonable for Ms. Mills to advise Myers of his estimated guidelines range without knowing the results of the drug purity analysis. And "'[w]here, as here, the evidence does not clearly explain what happened ... the party with the burden loses.'" Beeman v. United States, 871 F.3d 1215, 1225 (11th Cir. 2017) (quoting Romine v. Head, 253 F.3d 1349, 1357 (11th Cir. 2001)). Because Myers has the burden of proving that counsel gave ineffective assistance, Chandler, 218 F.3d at 1313 (citations omitted), and because there is a "strong presumption" that counsel's performance was reasonable, id. at 1314 (citations omitted), Myers's conclusory allegations have failed to establish that counsel's pre-plea advice fell outside the wide range of constitutionally competent assistance.

Moreover, there is not a reasonable probability that Myers would have rejected the Plea Agreement and proceeded to trial even if he had known he would be held accountable for 275 grams of pure methamphetamine. For starters, when Myers pled guilty he acknowledged that the maximum penalty was 40 years in prison. Plea Agreement at 2; Plea Tr. at 10-11. Myers recognized that the Court had authority to impose any sentence

up to and including the maximum term of imprisonment, that the sentence ultimately imposed could be different from any estimate provided by his attorney, and that even if the sentence was more severe than expected he would still be bound by his guilty plea. Plea Tr. at 12-13. Myers maintained that he still wished to plead guilty. See id. at 13-14, 20-21. "Solemn declarations in open court," such as the ones Myers made when he pled guilty, "carry a strong presumption of verity." Blackledge v. Allison, 431 U.S. 63, 74 (1977). Because Myers knowingly and voluntarily assumed the risk that he would be sentenced to as much as 40 years in prison, and that any guidelines estimate provided by his attorney could be inaccurate, there is not a reasonable likelihood he would have rejected the Plea Agreement and insisted on going to trial had he known the results of the drug purity analysis.

Additionally, this very issue was covered at the sentencing hearing, where it was made clear that Myers wished to maintain his guilty plea even after he learned the results of the drug purity analysis. The following discussion occurred at sentencing:

> MS. MILLS: …. And then when we get to this case, Your Honor, the argument that I made in my memorandum, it's one that I've made before. Mr. Myers received a sentence in this case which is on the base offense level which is six levels higher than someone who would be sentenced for a mixture of substance.
>
> And when I was going over this with him – this is something that I do want to put on the record, and I've discussed it with Mr. Hamilton [the prosecutor]. I had originally assumed that he was going to be much lower than this because I thought that it was a mixture of substance and he would start at base offense level 26.
>
> It came as a surprise to me, again, because I had not gotten the drug report. And it was certainly of no fault to Mr. Hamilton. It was sort of a discovery snafu.
>
> And when we got the drug report, it was a surprise to me – and

> notably a surprise to Mr. Myers – that the mixture was not a mixture of substance. The purity was much higher.
>
> <u>And I have discussed that with Mr. Myers. And he wants to proceed with his sentencing.</u>
>
> <u>I told him, I said, you know, I can withdraw the plea because we weren't aware that the base offense level was going to be so high. And I said, We can make a motion to do that.</u>
>
> <u>And he didn't want to do that, Your Honor. He wanted to proceed today because it is what it is.</u>

Sentencing Tr. at 8-9 (emphasis added). A short while later, the Court gave Myers the opportunity to speak in allocution. Myers stated that he wished "to accept the consequences of my one action that I will regret for the rest of my life," commended his counsel "on a job very well done," and asked the Court for leniency. Id. at 10-11. Because Myers declined to seek withdrawal of his guilty plea even after he learned the results of the drug purity analysis, the record affirmatively refutes any suggestion that knowing the results of the drug analysis <u>before</u> he pled guilty would have altered his decision. Accordingly, to the extent Myers claims that counsel gave ineffective assistance in connection with his decision to plead guilty, the record affirmatively refutes that claim.

To the extent Myers argues that counsel gave ineffective assistance <u>at sentencing</u> by failing to demand that the government introduce the drug report as proof of the methamphetamine's purity level, that claim lacks merit as well. As the government stated, the drug purity analysis revealed that the methamphetamine sold by Myers had a purity level of between 97.1% and 100%, Response at 3, resulting in Myers being held accountable for 275 grams of actual methamphetamine, PSR at ¶ 24. At sentencing, Myers did not contest the results of the drug purity analysis or object to the weight of actual methamphetamine attributed to him. Rather, Myers stated that he accepted responsibility

11

for his actions and praised his counsel "on a job very well done." Sentencing Tr. at 10. Myers fails to explain why it was unreasonable for counsel not to demand that the drug report be entered into evidence, or how not doing so was prejudicial, especially when he did not dispute the contents of the report or the accuracy of the drug weight.

Therefore, regardless of how one interprets Myers's ineffective assistance claim, he has failed to establish that counsel's performance was either deficient or prejudicial under the standards of Strickland v. Washington and Hill v. Lockhart. As such, relief on the § 2255 Motion is due to be denied.

### B. Myers's Reply Brief: Whether Myers's sentence should be reduced pursuant to The First Step Act or the Eighth Amendment

In his Reply brief (Civ. Doc. 27), Myers claims that he is entitled to a sentence reduction under The First Step Act of 2018, Pub. L. No. 115–391, 132 Stat. 5194 (2018), and that his 110-month prison sentence is cruel and unusual, in violation of the Eighth Amendment to the United States Constitution. However, Myers did not obtain leave of Court to raise these two claims for relief. New claims raised for the first time in a reply brief are deemed waived and may not be raised without leave of Court. Oliveiri v. United States, 717 F. App'x 966, 967 (11th Cir. 2018); Snyder v. United States, 263 F. App'x 778, 779-80 & n.2 (11th Cir. 2008). Because Myers neither requested nor obtained leave of Court to add these two claims, they are procedurally barred.

Nevertheless, these claims lack merit. First, Myers asserts that the First Step Act "made substantive changes to … 21 U.S.C. 841(a) and 841(b)" and that "those changes effect [sic] Petitioner based on the fact that the change happened after Petitioner was sentenced." Reply at 4. However, Myers is not entitled to relief under The First Step Act of 2018 because that law did not retroactively reduce sentences for defendants, like Myers,

who were convicted of an offense involving methamphetamine. Section 404 of the First Step Act did make retroactive the provisions of the Fair Sentencing Act of 2010, which sought to reduce the sentencing disparity between crack cocaine and powder cocaine offenses by raising the quantity of crack cocaine necessary to trigger the 5- and 10-year mandatory minimum sentences under 21 U.S.C. §§ 841(b)(1)(A) and (b)(1)(B). United States v. Carter, — F. App'x —, 2019 WL 5295132, at *3 (11th Cir. Oct. 18, 2019). Myers cannot benefit from these changes because he was not convicted of a crack cocaine offense, and in any event, he was sentenced after the effective date of the Fair Sentencing Act. The First Step Act also reduced the mandatory minimum sentences for repeat drug offenders and made the imposition of such enhanced minimum sentences more difficult by requiring a prior conviction for "a serious drug felony" instead of any "felony drug offense." First Step Act, § 401. However, the First Step Act did not make § 401's changes retroactive. But even if they were applied retroactively, § 401 still would not benefit Myers because he was not subjected to any recidivist enhancement under 21 U.S.C. §§ 841(b)(1)(B). Myers does not identify any other provision of the First Step Act that could conceivably benefit him. Indeed, the Court appointed the Office of the Federal Public Defender to review Myers's case to determine if he qualified for relief under The First Step Act, but the Federal Public Defender recently notified the Court that he did not. (Crim. Doc. 40, Notice from the Federal Public Defender). Accordingly, Myers's claim for relief under The First Step Act fails.

Myers's claim for relief under the Eighth Amendment fares no better. For one, this claim is procedurally defaulted because Myers could have raised the argument on direct

appeal but he failed to do so. Lynn v. United States, 365 F.3d 1225, 1234 (11th Cir. 2004).[3] But the claim also fails on the merits. The Eighth Amendment to the United States Constitution prohibits the infliction of "cruel and unusual punishments." U.S. Const., amend. VIII. "The Eighth Amendment's prohibition of cruel and unusual punishments 'contains a narrow proportionality principle that applies to noncapital sentences.'" United States v. Carthen, 906 F.3d 1315, 1322 (11th Cir. 2018) (quoting United States v. Johnson, 451 F.3d 1239, 1242 (11th Cir. 2006)). "Defendants arguing that their sentences are constitutionally excessive must make a threshold showing of gross disproportionality." Id. (citing Johnson, 451 F.3d at 1243). If the defendant satisfies that burden, the Court then considers "sentences imposed on others convicted in the same jurisdiction and the sentences imposed for commission of the same crime in other jurisdictions." Johnson, 451 F.3d at 1243. In general, a sentence imposed within the statutory limits does not violate the Eighth Amendment. Id. "Successful Eighth Amendment challenges in non-capital cases are 'exceedingly rare;' so rare, in fact, that never have we concluded that an adult's non-capital sentence violates the Eighth Amendment." United States v. Green, 754 F. App'x 943, 944 (11th Cir.) (quoting United States v. Suarez, 893 F.3d 1330, 1336 (11th Cir. 2018)), cert. denied, 139 S. Ct. 2730 (2019).

Myers has failed to make the threshold showing that his sentence was grossly disproportionate. His sentence of 110 months in prison, followed by a three-year term of supervised release, was not grossly disproportionate to the offense, which involved conspiring to distribute over 250 grams of methamphetamine. The sentence was far closer

---

[3] Moreover, the sentence-appeal waiver in Myers's Plea Agreement contained an exception for Eighth Amendment claims, Plea Agreement at 15-16, so the appeal-waiver would have been no bar.

14

to the 5-year mandatory minimum sentence than the 40-year maximum sentence applicable under 21 U.S.C. § 841(b)(1)(B), and it represented the low end of a guidelines range that had already been lowered pursuant to a substantial assistance reduction. Indeed, the Eleventh Circuit Court of Appeals has rejected Eighth Amendment challenges to the penalty range under § 841(b)(1)(B), e.g., United States v. Holmes, 838 F.2d 1175, 1178-79 (11th Cir. 1988), and the Eleventh Circuit has specifically rejected Eighth Amendment challenges to sentences harsher than Myers's for roughly similar conduct, Green, 754 F. App'x at 944-45 (affirming aggregate sentence of 230 months in prison based on convictions for possession with intent to distribute less than 50 grams of methamphetamine and conspiracy to possess with intent to distribute less than 50 kilograms of marijuana); United States v. Williams, 618 F. App'x 541, 544 (11th Cir. 2015) (affirming sentence of 120 months in prison for defendant convicted of conspiracy to possess with intent to distribute 50 grams or more of methamphetamine). Distributing illegal drugs is "a serious crime which is widely condemned by society," Holmes, 838 F.2d at 1178, 275 grams of actual methamphetamine is not an insubstantial amount, and Myers had an "atrocious prior record" that garnered 25 criminal history points, Sentencing Tr. at 15, 16. Because Myers's 110-month prison sentence was not grossly disproportionate to the crime, his Eighth Amendment claim must fail.

### III. Conclusion

The Court has considered Myers's claims on the merits and finds that none of his arguments warrants relief under 28 U.S.C. § 2255. Accordingly, it is hereby **ORDERED:**

1. Petitioner William Brian Myers's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence (Civ. Doc. 1) is **DENIED**.

2. The Clerk should enter judgment in favor of the United States and against Myers, and close the file.

3. If Myers appeals the denial of his motion, the Court denies a certificate of appealability (COA).[4] Because this Court has determined that a COA is not warranted, the Clerk shall terminate from the pending motions report any motion to proceed on appeal as a pauper that may be filed in this case. Such termination shall serve as a denial of the motion.

**DONE AND ORDERED** at Jacksonville, Florida this 24th day of February, 2020.

BRIAN J. DAVIS
United States District Judge

lc 19

Copies:
Counsel of record
Petitioner

---

[4] This Court should issue a COA only if a petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make this substantial showing, Petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," Tennard v. Dretke, 542 U.S. 274, 282 (2004) (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further,'" Miller-El v. Cockrell, 537 U.S. 322, 335-36 (2003) (quoting Barefoot v. Estelle, 463 U.S. 880, 893 n.4 (1983)). Upon due consideration, this Court finds that a COA is not warranted.